Leite v State of New York (2023 NY Slip Op 03379)

Leite v State of New York

2023 NY Slip Op 03379

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

534771
[*1]Pedro Alberto M. Leite, Also Known as Peter Leite, et al., Appellants,
v
State of New York, Respondent.

Calendar Date:May 3, 2023

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Ceresia, JJ.

Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel) and Rubin Law, PLLC, New York City (Denise A. Rubin of counsel), for appellants.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

Lynch, J.
Appeal from an order of the Court of Claims (Francis T. Collins, J.) entered January 12, 2022, which granted defendant's motion for summary judgment dismissing the second amended claim.
In late March 2020, at the inception of the COVID-19 pandemic, the Department of Health (hereinafter DOH) issued four purchase orders to claimant Hichens Harrison Capital Partner, LLC (hereinafter Hichens) to procure ventilators and anesthesia equipment manufactured in China. The three purchase orders issued on March 28, 2020 authorized Hichens to supply 5,000 ventilators at a cost of $160 million and 100 anesthesia machines for $1.75 million. A fourth purchase order was issued the next day to supply 500 additional anesthesia machines for $8.75 million. One purchase order for each item specified that payment was "Due Now" and one specified that payment was "Net 30." Each purchase order was accompanied by Appendix A — the "Standard Clauses for all New York State Contracts" and Appendix B — "Additional Standard Terms (COVID-19 Related Transactions)."
The record includes an exchange of communications between the parties in which claimants were demanding immediate payment, while defendant represented that steps were being taken to wire payment. On March 30, 2020, claimant Pedro Alberto M. Leite, president of Hichens, emailed defendant with the routing information required for payment. That same day, Leite advised that payment was necessary to secure the products. The next day, defendant requested confirmation about the warehouse supply and that Hichens was acting as agent for the manufacturer. Leite directly confirmed that the products were in a warehouse and that Hichens was "buying from the manufacturer" (emphasis omitted). On April 1, 2020, Leite emailed defendant's representatives that payment was past due and "we risk lo[ ]sing the entire production due to a lack of performance by the state" (emphasis omitted).
On April 7, 2020, Sean Carroll, the Chief Procurement Officer at the Office of General Services, advised that defendant needed to first inspect the inventory and would wire payment immediately "[u]pon successful inspection." In that same email, Carroll identified defendant's designated agent in China authorized to conduct the inspection. Two days later, defendant endeavored to arrange a warehouse visit only to be informed that the inventory was no longer available.[FN1] On April 15, 2020, Carroll emailed Leite, and advised that defendant was withdrawing the purchase offers.
Claimants filed a second amended claim for breach of contract, intentional and negligent inducement to contract and promissory estoppel, seeking $144 million in contract damages and $56 million for reputational damages. After informing the parties that it would treat defendant's motion to dismiss as a motion for summary judgment, the Court of Claims granted the motion and dismissed the second amended claim. Claimants appeal.
We affirm. In its brief on appeal, defendant concedes for [*2]purposes of summary judgment that the purchase orders were contracts that required payment "Due Now," and that defendant was obligated to make payment prior to the shipment of the goods.[FN2] Even so, defendant maintains that claimants materially breached the agreements by failing to allow its representatives to first inspect the inventory prior to payment. Pertinent in this regard, Appendix B, paragraph 4, of the purchase orders specifically authorized defendant to inspect the goods prior to shipment. Correspondingly, under paragraph 11, in the event defendant "reject[ed] any quantity of a [p]roduct due to any quality issues or any non-conformance with the [p]roduct [s]tandards and [s]pecifications . . . [defendant] shall not be responsible for paying any amount for such quantity of the [p]roduct." Construing the contract in a manner that gives due effect to each provision (see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]), we conclude that these two provisions connect defendant's right of inspection to its payment obligations. While each purchase order required prompt payment, no specific due date was included. Nor did the purchase orders expressly require payment before inspection (see UCC 2-512 [1]). As such, defendant "ha[d] a right before payment or acceptance to inspect [the goods] at any reasonable place and time and in any reasonable manner" (UCC 2-513 [1]).
It follows that claimants had no contractual right to demand payment before defendant was given a reasonable opportunity to inspect the inventory. With due recognition of the danger and difficulties attendant the pandemic, the record confirms that defendant duly and timely exercised its contractual inspection rights (see UCC 1-205 [b]; Ben Zev v Merman, 73 NY2d 781, 783 [1988]). Claimants' failure to allow an inspection and the outright sale of the inventory on April 5, 2020 constituted a material breach authorizing defendant's termination of the purchase order on April 15, 2020. This is all the more so given that under Appendix B, paragraph 9, defendant was authorized to terminate the purchase orders at any time upon written notice to claimants.
Claimants' further assertion that they had already cancelled the purchase orders on April 3, 2020 for lack of payment fails for several reasons. Under Appendix B, paragraph 9, the seller was authorized to terminate the contracts for nonpayment only upon written notice of termination allowing defendant to cure the breach within 30 days. No such termination notice was provided. Claimants' reliance on an April 3, 2020 email from Leite to Carroll as a termination notice is misplaced. That email actually references two offers for COMEN AX-400 anesthesia equipment, rescinding one of the offers. No reference is made to the purchase orders or even the SH 300 ventilators specified in two of the orders. In short, the document does not evidence a cancellation of the purchase orders. We find claimants' [*3]remaining contentions without merit and conclude that the Court of Claims properly granted summary judgment dismissing the second amended claim.
Egan Jr., J.P., Clark, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The record shows that claimants sold the inventory to the government of Sao Paulo, Brazil on April 5, 2020.

Footnote 2: In the transmittal for each purchase order, defendant expressly stated that "[a] purchase order serves as authorization for a New York State supplier to provide goods and/or services to a New York State Agency or Authority." The purchase orders all specified that the "[v]endor signifies its acceptance of the terms and conditions of Appendix A by delivery of the goods or services and/or by the acceptance of payment." Neither event occurred here.